Good morning. May it please the Court, Ted Frank of the Nonprofit Center for Class Action Fairness for Appellant Marie Newhouse. The District Court here made multiple independent reversible errors of law. Apple was willing to settle this case for an economic value of about $4 million, but class counsel structured the settlement to pay over $3 million of that amount to itself, about 80%. This disproportionate allocation makes the settlement per se unfair and was a reversible error of law to approve it. And that's Baby Products, 708F3163. That's Draw Max Pampers, 724F3713. That's Bluetooth, 654F3935. We don't know how disproportionate the settlement allocation here is because the District Court never made findings on the disputed value of the settlement, and that's a separate independent reversible error. Should we do anything more than just send it back and say to the District Judge, you didn't do the analysis that's required by Bluetooth and other cases? Go back and start again? At a very minimum, you should do that, but I think you can go further and just throw it out entirely because the parties never come in and point to any record evidence that the settlement's not disproportionate. What we have here is we have them saying there are 12,000 claims. They never say there are more than 12,000 claims. We have this refund program, but that was already in place before the settlement, before the litigation was even brought. And it's black-letter law that you can't take credit in the settlement for something that the defendant's already doing. That's the ALI Principles 313. That's Pampers again at 724F3rd and 719. We discuss other cases that are briefed at pages 26 in the opening brief and page 5 of the reply brief. So this is so clearly disproportionate that I think as a matter of law, to be held doesn't satisfy 23E. Well, you know, disproportionate by itself doesn't necessarily make a settlement or a result inappropriate. We see 1983 cases all the time in which the amount of time spent litigating is such that the attorney's fees may be a million dollars and the amount recovered, $10,000. So disproportionate by itself I don't think is enough. I agree in the civil rights context. And I we're not saying to apply that rule to the civil rights cases because you have 42 U.S.C. 1988 there that says we think Congress thinks that these civil rights actions are very important and we want to make sure attorneys have the power to come in and make sure that people aren't being strip searched, that their first amendment rights aren't being violated. I don't understand. But what I'm saying is it seems to me at least appropriate for a district judge in looking at a class action settlement or a pre-certification class action settlement such as this one to have a look at how much work was actually performed by the plaintiffs. Now, if it turns out they didn't perform much work and it's disproportionate, I think that's a problem. But I think the district judge gets to look past the disproportion and treat that as a factor, but not as in and of itself determinative. We would argue that the fiduciary duty of the class attorneys means that they have to put the class first. Well, I understand that, too. I'm not quarreling with that principle. I certainly there might be very extraordinary circumstances where this sort of ratio would be appropriate, but a case that settles before there are any significant motion practices and less than 1 percent of the class gets any relief and the attorney's recovery dwarfs the class recovery, I think that's very problematic. What, if any, importance should we attach to the fact that the settlement was achieved with, I guess I'll say it, the assistance of a very experienced former district judge? I don't think we should attach any significance to that. The mediator has no duty to the parties who are not at the table, and that's the absent class members. Pampers had a mediator, and I hope mediators pay more attention to these factors in the future, but the job of the mediator is to get the parties together and get a settlement done, and it's not necessarily to, are the absent class members being fairly treated, and there's nobody at the table making sure that that happens. Judge Silverman, you wrote the Glasser opinion. You know that at page 1088, it specifically says that somebody in Newhouse issues who's making the arguments Newhouse has, has standing. Plaintiffs throughout this appeal and in the court below have just consistently misstated the law and the facts with respect to that, and I hope there are some consequences for that. And we really hope that this court enforces the Azizian rule on appeal bonds. We're seeing more and more district courts issue punitive appeal bonds. We're seeing more and more plaintiffs' lawyers asking for quarter-million-dollar appeal bonds, all sorts of appeal bonds that Azizian simply forbids. And for some reason, this illegal appeal bond wasn't vacated in this case, and Ms. Newhouse has had to have $15,000, which there's just absolutely zero chance anybody's going to recover that in class under Rule 39 in this case. But she's had to have that on file at the district court for almost two years now, which I've reserved the rest of my time for rebuttal. Thank you, Mr. Frey. Okay, how are you folks going to divide up your time? You have a total of ten minutes. Good afternoon, Your Honor. Helen Zeldes on behalf of the class. My co-appellee for Apple will split the time evenly, five minutes each. Great. So would you put five minutes on the clock, please, Mark? There you go. Okay, Ms. Zeldes. Thank you. May it please the Court. Your Honors, Mr. Frank does what he's done all along. He cherry-picks the facts to support the conclusions he makes. This settlement is a tremendous victory for class members. There is no disproportionate fee here. We achieved near a trial victory for class members. We got cash refunds for them, up to $79, the full value of the adapter at issue in this case. Class members could make three claims each. Class members could claim then up to $237. This is not some kind of Cypre or coupon. How much additional benefit did you get the class members beyond what they were already getting from Apple's program? Because they had some program to compensate to some But it was less time-limited than the settlement you got. So I'm trying to figure out how much value added did this class action, or would be an uncertified class action, provide? Tremendous. Tremendous benefit. So under the, quote, unquote, preexisting program, which we debate how much notice anybody knew about that program, how any consumer might find it, you'd have to know what search terms to find it buried on Apple's support page. Unlike that, and Apple, by the way, was not under any legal duty to continue that program for a single day. The value here, and this Court's holding in Lane v. Facebook, is that that has value. That's not illusory. When a defendant has a program and there's a judicially enforceable agreement where they can't withdraw that program for a period of time, that has value. And that is one of the values of the settlement. But also, in addition to that, we got cash refunds. Consumers were not entitled to cash refunds. These products came with a 90-day or one-year warranty. We got them up to three years where they could still get their money back. What about people who were four years out? Did they get nothing? Some people get nothing under this settlement. And that this Court, the Ninth Circuit recently, in Enray, NVIDIA, it was a computer case, much more on all fours with this than any of the Bluetooth cases to date. It's post-Bluetooth. This Court in, I think it was August 2013, found that some folks threw out their computer and got nothing under the settlement. And this Court, it's an unpublished opinion, but it's very relevant here, this Court approved the settlement and said, well, you know, their option was to opt out. These adapters only came with 30-day 90-day to one-year warranties. If you think you've got a good claim for four years out, and you think if you were at the table, at the settlement table, and you could have got a better deal, by all means, opt out. Bring that four-year warranty.  And that's the case. Yeah. You know, my problem with this case is the one I don't think I can get around is I think the district judge just didn't properly go through and analyze under Bluetooth. And I'm inclined to remand and say, do your job properly under Bluetooth. And I understand if you go back to a different district judge. So when I say go back, it'll be go to whatever district judge gets it. But why shouldn't we remand to comply with Bluetooth? Well, I think the Court did comply with Bluetooth. Bluetooth came out after preliminary approval and before final approval. It was absolutely briefed, argued. There was – Well, I got that point. Right. Not that Bluetooth wasn't in front of the district judge, but it's what I look at the district judge did. He didn't go through and analyze the Bluetooth factors. Well, we argued them, and the objectors came and presented their case as to what they thought Bluetooth meant. Yeah, but my question is not whether you argued them. Right. My question is whether the district judge did in response to the arguments. We – well, we believe he did consider the value of the settlement. We put ample evidence. Unlike Bluetooth in our case, we put actual evidence before the Court, our actual lodestar. In Bluetooth, there was no lodestar calculation. The judge never even did the math he started to and didn't finish it. There was no lodestar calculation. We had a declaration from a mediator, which is a factor that goes against the statute. We had a declaration from a well-respected mediator in our case that was before the Court. That's not true in Bluetooth. The Court made findings in his order that the settlement created a value, a substantial value for the class. The Court did go through and consider – I think what Bluetooth says is there needs to be ample evidence in the record that the Court considered the value to the class, that we're not trading off any benefit or anything of our fees for some benefit of the class. The Ninth Circuit or a court reviewing the record needs to have enough evidence in the record to review what the Court considered. And I could go on for 20 minutes about all the evidence that was submitted before the Court. The Court did consider the value of the cash component. We put that squarely before the Court. The Court knew exactly how much each tier of the settlement was worth. We put evidence before the Court that the replacement program was worth even the first eight weeks into the settlement. At final approval, we had noticed it had been out eight weeks. We'd already had 20,000 claims for the replacement program. The replacement program, Mr. Frank completely discounts, gives an adapter that's worth $79, a brand new redesigned adapter. We got our clients not just a replacement adapter that we said was defective. Apple redesigned it. That's a huge benefit under the settlement, and the Court was aware of that. I see you're going into Apple's time now. Thank you. Thank you. Good morning. Good morning. Thank you. Excuse me, Your Honor. Thank you, Your Honor. Deanne Maynard for Defendant Apple. There's no need to remand here. The district court found at ER 18 that this settlement created a benefit with substantial value to the class, and that finding is amply supported by the record that existed before the district court when it made that finding. The settlement here provided direct substantial benefit to the class members in two forms. One, cash refunds for anyone who had purchased a replacement adapter because their adapter had failed due to strain relief in the first three years of ownership. And secondly, prospectively, everyone in the class was eligible to bring a failed adapter into an Apple store or ship it back, and Apple would give them a brand new $79 adapter. Now, to be sure, there was a replacement program in place before, but it wasn't. Apple was under no requirement to continue it for any length of time, and what Apple had done, and had not done, was to mail direct notice to 7.5 million people telling them, if your adapter fails due to strain relief, bring it in, we'll give you a free $79 adapter. At the time of the hearing, in the record, in the first eight to ten weeks since notice had given, there's a declaration, the Colson Declaration, that says, as of the end of January of 2012, 20,000 free adapters had been given out. 20,000 free adapters. So with 18 months left to go, so until the program ran under the settlement agreement, Apple is required to keep the program in until the end of July 2013. So in eight to ten weeks, already 20,000. Even if you assume that over the next 18 months, that return, that rate's going to decline. Even if you assume it just declines by half, you know, there would be close to 90,000 additional adapters given out. And 20,000 times, plus 90,000, is times $79, is significant direct economic benefit to the class. And as this Court held in Staten when it was discussing Hanlon, it recognizes that replacement product is concrete, measurable benefit to the class. And as this Court recognized in Lane, locking in something, even something a defendant has already done, is a benefit to a settlement agreement. And certainly, that was what happened here. So in Lane, you may recall the Beacon Program was the subject of the Lane v. Facebook case. As of the time of the settlement, as the majority explains in Lane, the Beacon Program had already been taken down. Facebook had already taken it down. And as a part of the settlement, Apple had to leave it dismantled. And there was a dispute on the parties whether that could be attributed to the settlement as a benefit. And this Court held, yes, indeed, because absent the settlement, Facebook had no obligation to leave it discontinued. So to here, absent the settlement, Apple had not and was under no obligation to send direct notice to 7.5 million people, which is what Apple did here. Let me ask you this. I'm not sure this is strictly relevant, but it does occur to me to ask. I notice on the first or sort of the cover page of the order of granting final approval, in capital letters and so on, it says order of granting, da, da, da, da, da. In brackets, there was the word proposed that is crossed out, which leads me to suspect that this was submitted to the district judge by one of the parties or several of the parties and the district judge just signed it. Is that right? This was the proposed order. Certainly, this Court has, you know, that's a common practice in court. I understand. Did the district judge make any changes to the proposed order beyond striking out the word proposed? It appears somebody typed in the Lodestar amounts and the Lodestar calculation. I do not know when that occurred, Your Honor, on page... On page 18. Yeah, yeah. On page 5 of the order, ER18. Yeah, yeah. I got that. Yes, Your Honor. But I think it's important to note that this Court, in the settlement hearing, the district court had two hearings here before it approved the settlement, the preliminary hearing and then the fairness hearing. The district court actively participated in both. And at the fairness hearing, at the final fairness hearing, where the objectors appeared and were represented ably by counsel, the district court pressed the parties on the value. Now, how exactly does this replacement program work? What does it mean? I can bring it in. And what will happen? And he was told, you'll be given a free $79 adapter. How long will it last? Why is three years the pick? Why is that the number? And he pressed the parties, and it was explained to him, three years was a reason the parties had settled on three years because this is a product with a limited  The warranty only runs into a year. It's highly questionable whether anyone has a claim. But you can understand why somebody who's got one that's four years old says maybe if they didn't pay the lawyers so much, they would have included me. The parties hotly negotiated both the terms of the settlement and the attorney's fees. Apple believed that this settlement adequately compensates its consumers. And, you know, it's a fallacy to believe that Apple doesn't have a – doesn't care between its consumers and plaintiff's counsel who sue it. Apple cares, I know. Yes. Apple would rather see more money go to its consumers. But under this settlement, we feel like the consumers have been adequately compensated. This is a product with 90 days if you buy it alone, a year warranty if you buy it with your computer. And people who have failures after three years of active use of the product have no legal claim. So no, there's – so defendants aren't entitled – aren't required in settlements to make their – to give windfalls to people who have absolutely no legal claim. There's no response. We make a merits argument in our brief explaining what the substantial legal challenges would be here to any claim beyond a year. And the objector's replies are silent. They have no claim. Their theory does depend on the idea that somehow people who had a working adapter for four years should have some piece of the settlement. Okay. Thank you, Ms. Maynard. Mr. Frank, you had a little time left, I believe. Maybe $4 million is a windfall. But if it's a windfall, that windfall should be proportionally allocated between the class and the attorneys. Maybe the class is only entitled to a peppercorn. But then you can't take the peppercorn, say, see the peppercorn fairly compensated class. But here's my problem. Let's assume that $3 million is excessive compensation to the plaintiff's lawyers. I'm not saying that as a fact. I'm just saying let's assume. But as I look at the plaintiff class for those three years, are you just going to give them free money? I mean, so where's the – you take money away out of the $3 million and you give it to the plaintiff class. Who are you giving it to and on what basis? You can give it to my client. She can give it to the parties who were getting less than $79. And you're going to double give it to your client because? My client had an adapter that failed, but she gets zero under the settlement. And she gets zero under the settlement because? They decided that she would be gerrymandered out, so that would limit Apple's payment. Meaning she's outside the three-year period. She's outside of the three-year period. And how many people are outside the three-year period? Do we have any idea? We have no idea. We don't know. And even with the replacement adapters, you know, Apple is saying 20,000 people claimed it in the first 10 weeks, and we don't know whether that's 15,000 in the first week and 500 a week after that. They know how many have been claimed. That period has long passed, and they're not coming up here with the numbers, so we can draw the adverse inference that it's low. We don't know how many people were making claims before there was a settlement. Yeah, but if we're judging what the district judge did at the time of approving the settlement, I don't think we can know anything more than he knew at that time. Well, he could have looked at how successful the replacement program was before there was a settlement. Is the settlement actually making a difference? Yeah. It's the incremental benefit that matters. And that's Reynolds v. Beneficial National Bank, 288 F. 3rd, 277 and 286. We didn't cite that in our briefs. The – and Dennis v. Kellogg requires the judge to give a reasoned response to the objections. And this was a substantive objection. And the only thing the judge says is the objections are overruled. He doesn't mention Bluetooth at the fairness hearing. He doesn't mention it in his order. And even at the appeal bond stage, he says, I think the appeals are frivolous because they're just about the fees. And these appeals aren't just about the fees. So the only indication the judge gave that he considered the objections is that he misunderstood the objections, that he accepted the plaintiff's false representation that we're only making a 23H objection. You asked about whether the judge rubber stamps the order. And that's exactly what happened. We mentioned that in our brief. You can find the proposed order, ER 126 to 132, and compare it to the final order. And that's what he did. He crossed out the word proposed. Yeah. And he filled in a couple of blanks. And filled in a couple of lines. The plaintiffs talk about the cash to the class. But what they don't mention is what we raise in our objection. And the district court disregarded and distinguishes this case from the NVIDIA. You have a class of Apple computer users. And to make a claim, you had to print out the claim form and mail it in by snail mail. And then a settlement administrator would be paid to enter it into a computer. And then a claim would be paid. And the only reason to agree to that burdensome process that actually raises settlement administration costs is because they're hoping to throttle the number of claims. And fine, it's okay to throttle the number of claims. Here's 60,000 claim points were downloaded, but only 12,000 were submitted. It's fine to throttle the amount of claims if the relief is proportional. But the relief here really wasn't proportional. The parties agreed to a settlement that required Apple to pay out less than a million dollars and keep giving out the same customer service they've been giving since 2008 and had given no indication of canceling. In fact, the current replacement program is worse than the 2008 replacement program. And this token cash relief that is dwarfed by what the attorneys collected for themselves. Thank you, Mr. Frank. Thank you. Okay. We'll move on now to Mr. Gaudet's appeal.
judges: Silverman, Fletcher, Bybee